1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JAMISI JERMAINE CALLOWAY,              No.  2:16-CV-2532-WBS-DMC-P

12                    Plaintiff,

13            v.                            ORDER

14   CALIFORNIA DEPARTMENT OF
     CORRECTIONS AND
15   REHABILITATION, et al.,

16                    Defendants.

17

18            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

19   42 U.S.C. § 1983.  Pending before the Court is Plaintiff's complaint (ECF No. 1).  Plaintiff

20   alleges, generally, Defendants violated his rights under the First Amendment, Eighth

21   Amendment, and under the Due Process Clause of the Fourteenth Amendment.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                              1

# I.  SCREENING REQUIREMENT AND STANDARD

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).

The Federal Rules of Civil Procedure require complaints contain a "…short and plain statement of the claim showing that the pleader is entitled to relief."  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (quoting Fed. R. Civ. P. 8(a)(1)).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal–Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and are afforded the benefit of any doubt.  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572F.3d at 969.

///
///
///
///

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) J. Lewis (2) R. Briggs (3) M. Vcong (4) D. Artis (5) T. Lee (6) C. Hammond (7) R. Pimental (8) M. Hodges (9) A. Pacillas (10) D. Goree (11) K. Cribbs (12) J. Jasso (13) D. Ramos (14) T. Vang (15) D. Nelson (16) T. Cherukuri (17) A. Infants (18) T. Ordonez (19) D. Hermosillo (20) M. Carrasquillo (21) K. Martin (22) L. Donnelly (23) A. Poythress (24) M. Lowe (25) E. Facio Jr. (26) A. Adams (27) G. Williams (28) D. Julie Jacobs (29) J. Wang (30) C. Cryer Jr. (31) C. McCabe (32) G. Ugwwzze (33) Butts (34) Church (35) Enenmoh (36) White (37) Nguyen (38) Pham (39) Benson (40) Guyaallen (41) Patel (42) Lipster (43) Brizendine (44) M. Fritz (45) Orelino (46) Ping (47) Schafer (48) Abu (49) T. Wells (50) K. Min (51) Foroutan (52) Alex (53) Frant (54) Sagreddy (55) Kent (56) Pat (57) Carman (58) Steve (59) Candy (60) Denice (61) R.J. Rackely (62) B. Duffy (63) S. Sherman (64) M. Jennings (65) F. Vasquez (66) V.J. Singh (67) P.S. Nowling (68) J. Zamora (69) J. Neely (70) C. Shirley (71) T. Macias (72) C. Cryer (73) S. Vemuri (74) R. Shephard (75) A. Iadson (76) A. Baer (77) M. Gamboa (78) D. Brittin (79) M.S. Thomas (80) A. Romero (81) J. Peudhel (82) R. Vogel (83) Heyer (84) K. Lewis (85) Roman (86) D. Martin (87) M. Pendel (88) S. Hart (89) M. Howard (90) T. Black (91) C. Cisneas (92) Singh (93) Cruz (94) Spualden (95) Chistopher (96) McGuire (97) Jimenez (98) Miller (99) California Department of Corrections and Rehabilitation. <u>See</u> ECF No. 1, at 1-6.

Plaintiff raises three claims. First, Plaintiff alleges Defendants, employees of the California Department of Corrections and Rehabilitation (CDCR), violated Plaintiff's Fourteenth Amendment right to Due Process by conspiring to discriminate, defraud, and destroy pertinent evidence to fabricate documents that caused Plaintiff to be wrongfully housed in an "Enhance Out Patient Hub." <u>Id.</u> at 6-7. Second, Plaintiff alleges that by housing him in the "Enhance Out Patient Hub," Defendants violated his Eighth Amendment rights because it caused him to "mentally and physically decompensate from unwanted stress and injuries." <u>Id.</u> at 7. Plaintiff's alleged injuries resulting from the Enhance Out Patient Hub include clotting in his right upper arm from the misuse of restraints during his hemodialysis treatment, which led to additional surgeries and hospitalizations to correct the injury. <u>Id.</u> Plaintiff asserts, while housed in the

Enhanced Out Patient Hub, Defendants deliberately delayed treatment to "declot" his arm because there is a facility policy to prioritize profit over his medical needs.  Id.  Plaintiff claims Defendants' actions placed his life in imminent danger because he did not receive adequate medical treatment for his serious life sustaining medical needs while in the Enhanced Out Patient Hub.  Id. at 8.

Third, Plaintiff alleges Defendants retaliated against him, in violation of his First Amendment rights, because he complained about the poor health care at CHCF-Stockton.  Id. at 7-8.  Specifically, Plaintiff alleges Defendants deliberately misplaced, destroyed, and stole his personal property and legal documents.  Id. at 7-8.  Further, Plaintiff alleges his First Amendment rights were violated by Defendants because their alleged retaliatory acts were meant to provoke Plaintiff to violence, silence him, and further delay his access to the courts.  Id.

## III.  DISCUSSION

As currently set forth, the Court finds Plaintiff's complaint fails to state a cognizable claim under § 1983.  Plaintiff alleges violations of his rights under the First Amendment, Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment.  Plaintiff's claims all fail to meet the pleading standard outline under Federal Rule of Civil Procedure Rule 8 as Plaintiff fails to specify which Defendant engaged in the conduct that lead to the alleged constitutional violations.  Further, even if Plaintiff had established factual links between the individual Defendants and the constitutional violations, Plaintiff's claims would still fail to pass screening as they lack sufficient factual allegations to support each alleged constitutional violation.

### A.     **Pleading Standard—Rule 8**

Turning first to the pleading standard under Federal Rules of Civil Procedure Rule 8.  To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he

4

does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Here, Plaintiff alleges all the named Defendants, generally, acted on behalf of the CDCR by collectively conspiring against him in order to place him in the "Enhance Out Patient Hub." Plaintiff does not specifically name or address any individual Defendant in the complaint, nor does Plaintiff allege how the named Defendants' personal conduct violated Plaintiff's constitutional or statutory rights. Because Plaintiff fails to allege any facts indicating which Defendant engaged in the alleged unconstitutional action, Plaintiff has failed to satisfy the Rule 8 pleading standard. Further, because Plaintiff failed to attribute any of the alleged unconstitutional conduct to any individual Defendant, this Court is unable to engage in a substantive analysis to determine if sufficient facts exist, as to each Defendant, for any of the claims to pass screening. For these reasons, Plaintiff's claims cannot pass screening as they fail to satisfy the pleading standard under Rule 8 of the Federal Rules of Civil Procedure. Plaintiff will be provided an opportunity to amend the complaint to set forth specific facts as to each named Defendant demonstrating what each Defendant did and how that action or inaction violated Plaintiff's constitutional rights.

### B.      Supervisory Liability

The Court turns now to the substantive defects in Plaintiff's complaint, beginning first with supervisory liability. The Court observes multiple Defendants named in the complaint hold supervisory positions. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.

See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

Here, Plaintiff appears to allege some of the Defendants are liable as supervisory personnel—asserting that as supervisors, these Defendants are liable for the conduct of their subordinates. This is a respondeat superior theory of liability, which is not cognizable under § 1983. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff is advised that in amending the complaint, he should be cognizant of the legal standard related to supervisory liability, outlined above, and note that a supervisor can only be held liable for their own actions or inactions resulting in the violation of Plaintiff's constitutional rights, not the actions or inactions of their subordinates.

### C. First Amendment

#### 1. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional

6

security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect."  Id. at n.11.  By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element.  Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Here, Plaintiff fails to allege sufficient facts to establish a First Amendment violation because it is unclear which Defendants engaged in the retaliatory action of deliberately misplacing, destroying, and stealing his personal property.  Further, Plaintiff's allegations related to this alleged retaliation are vague and conclusory.  Plaintiff alleges no facts indicating whether any of the Defendants had knowledge of the grievance that lead to the alleged retaliation and

alleges no facts demonstrating Plaintiff's speech was chilled.  Because Plaintiff fails to identify

which Defendants engaged in the alleged retaliatory conduct, and because Plaintiff alleges

insufficient facts to establish a retaliation claim generally, Plaintiff's First Amendment retaliation

claim cannot pass screening.

### 2.  Lack of Access to the Courts

Prisoners have a First Amendment right of access to the courts.  See Lewis v.

Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64

F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance

procedures).  This right includes petitioning the government through the prison grievance process.

See id.  Prison officials are required to "assist inmates in the preparation and filing of meaningful

legal papers by providing prisoners with adequate law libraries or adequate assistance from

persons trained in the law."  Bounds, 430 U.S. at 828.  The right of access to the courts, however,

only requires that prisoners have the capability of bringing challenges to sentences or conditions

of confinement.  See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous

criminal appeals, habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55.

Therefore, the right of access to the courts is only a right to present these kinds of claims to the

court, and not a right to discover claims or to litigate them effectively once filed.  See id. at 354-

55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner

must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to

contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-

frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).  Delays in

providing legal materials or assistance which result in prejudice are "not of constitutional

significance" if the delay is reasonably related to legitimate penological purposes.  Lewis, 518

U.S. at 362.

Here, Plaintiff alleges Defendants deliberately misplaced, destroyed, and stole his

personal property and legal documents in order to incite and provoke violence, which delayed his

access to the court.  However, as noted above, Plaintiff failed to allege the specific Defendants

that participated in the deliberate acts that delayed his access to the courts. Further, Plaintiff fails to allege an actual injury resulting from the alleged delay, such as an inability to meet a filing deadline. Because a plaintiff must allege "actual injury" to establish a First Amendment access to courts claim, Plaintiff's failure to assert an actual injury is fatal to his claim. Thus, Plaintiff's First Amendment claim for a lack of access to the courts cannot pass screening.

### D. Eighth Amendment – Medical Needs

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Plaintiff has not alleged sufficient facts to establish an Eighth Amendment violation. Plaintiff did not allege facts supporting an allegation that any Defendant acted unnecessarily and wantonly for the purpose of inflicting harm on Plaintiff. Further, Plaintiff failed to identify the specific defendants who misused the restraints during his hemodialysis treatment that led to blood clotting and additional surgeries. Additionally, it appears Plaintiff's claim is, at least in part, based on a theory of negligence. Because negligence in treating a medical condition does not give rise to an Eighth Amendment violation, any allegations related to alleged negligence fail to state a claim under § 1983. See Estelle, 429 U.S. at 106. Because Plaintiff has failed to allege sufficient facts to establish an Eighth Amendment claim, failed to link any Defendant to any alleged misconduct, and rooted his allegations in a theory of negligent

medical treatment, Plaintiff's Eighth Amendment claim cannot pass screening.

### E. Fourteenth Amendment – Due Process Clause

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred, however, where the deprivation is foreseeable and the state can therefore be reasonably expected to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See id. at 128-29.

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached."

Id. at 455-56.  However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus.  See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

Here, Plaintiff has not alleged sufficient factual allegations to support a Fourteenth Amendment violation claim under the Due Process Clause.  Plaintiff alleges all the defendants discriminated, defrauded, and destroyed pertinent evidence by fabricating documents that caused Plaintiff to be wrongfully housed in the "Enhance Out Patient Hub."  As discussed above, Plaintiff failed to identify the specific defendants who allegedly discriminated, defrauded, destroyed evidence, and fabricated documents.  Further, Plaintiff's factual allegations are too vague—it is unclear how Plaintiff was specifically discriminated against, how he was defrauded, and what pertinent evidence was destroyed through fabrication.  Thus, Plaintiff's Fourteenth Amendment claim under the Due Process Clause cannot pass screening.

## IV.  CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection

13

between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the following choices: (1) plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the court will address the remaining claims; or (2) plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's complaint is dismissed with leave to amend; and

2.    Plaintiff shall file an amended complaint within 30 days of the date of service of this order.

Dated: June 13, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14