**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMISI JERMAINE CALLOWAY, | No. 2:16-CV-2532-WBS-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court is Plaintiff's second amended complaint. ECF No. 30. The Court grants Plaintiff leave to amend the defects discussed below.

**I. SCREENING REQUIREMENT**

The Court must screen complaints from prisoners seeking relief against a governmental entity, officer, or employee. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain a short and plain statement of the claim that a plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim

1  to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Id. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Plaintiffs must demonstrate that each defendant personally participated in the deprivation of the plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint does not state a claim. Iqbal, 556 U.S. at 679. The complaint need not identify "a precise legal theory." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1038 (9th Cir. 2016).

The Court must construe a pro se litigant's complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). The Court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1208 (9th Cir. 2017).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff brings suit against thirty-one defendants.[1] ECF No. 30 at 7–11. Plaintiff names the following employees of the California Department of Corrections and Rehabilitation (CDCR) as defendants: (1) B. Duffy, a warden with the California Department of Corrections Rehabilitation (CDCR); (2) J. Clark, a chief medical officer with CDCR; (3) Butts, a medical doctor with CDCR; (4) Ko, a medical doctor with CDCR; (5) D.J. Jacobs, a medical doctor with CDCR; (6) O. Abu, a physician assistant with CDCR; (7) O. Kkinola, a physician assistant with CDCR; (8)

---

[1] The Court takes the defendants' alleged occupations and spelling of the defendants' names directly from the operative second amended complaint.

S. Agarwal, a medical doctor with CDCR; (9) M. Qureshi, a medical doctor with CDCR; (10) R. Hewitt, a health records director with CDCR; (11) D. Chanden, a supervising registered nurse with CDCR; (12) M. Cross, a health care appeals nurse with CDCR; (13) A. Adams, a medical doctor with CDCR; (14) N. Malakkla, a medical doctor with CDCR; (15) R. Recarey, a chief executive officer with CDCR; (16) C. Hammer, a chief support executive with CDCR; (17) J. Lewis, a deputy director with CDCR; and (18) S. Gates, a "chief" with CDCR. Id. He also names a Sergeant Biggs, apparently a correctional officer with CDCR. See id. at 1, 39.

Plaintiff further names the following privately employed defendants: (1) Foroutan, a medical doctor at San Joaquin General Hospital (SJGH); (2) Alex, a medical doctor at SJGH; (3) Frank, a medical doctor at SJGH; (4) K. Min, a medical doctor at SJGH; (5) P.B. Sagriddy, a nephrologist at San Joaquin Kidney Clinic, Inc.; (6) Kent, a supervisor at Davita Healthcare, Inc. (Davita); (7) Carman, a registered nurse with Davita; (8) C. Russell, a record analyst with Davita; (9) S. Davis, a record analyst with Davita; and (10) Irene, a technician with Davita Id.

Finally, Plaintiff names two other defendants but either does not clearly identify their name or the source of their employment. Id. at 1–2, 24 Plaintiff names as a defendant an unidentified "Davita Register Nurse." Id. at 2. He also names as a defendant a Dr. White, a medical doctor. See id. at 24. It is unclear if White is a CDCR employee or privately employed. See id.

Plaintiff's 58-page complaint is meandering, imprecise, and difficult to follow. See generally id. Plaintiff builds his complaint from disjointed discussion of specific events interspersed with broad legal conclusions. Id. Due to the length of the complaint, the Court provides a broad-stroke summary below.

The complaint lacks a clear chronology, but it appears that Plaintiff must regularly receive dialysis treatments. Defendants allegedly restrained Plaintiff against his will during those treatments. Variously, Defendants also either delayed his access to medical treatment or altogether denied it. Plaintiff complains that Defendants' use of restraints was contrary to CDCR policy and done in retaliation for his reporting the murder of another inmate to the media. Defendants disregarded the harm caused by the restraints, which damaged Plaintiff's arteries. Defendants also disregarded his worsening condition stemming from the refusals to treat him. He variously

experienced a life-threatening drop in blood pressure, developed an infection due to placement of an infected catheter in his penis, experienced pain from an improperly placed catheter in his chest, and may have experienced blood clots from Defendants' applications of restraints during dialysis.[2]

Plaintiff, on multiple occasions, complained about his poor treatment, as well as the inferior treatment that Defendants provided to another inmate leading to the inmate's death. As a result, Defendants threatened Plaintiff, placed him in isolation, delayed his medical care, and ultimately effectively denied him care (e.g., dialysis). Plaintiff contends that no white inmates were placed in restraints during their medical treatments. Plaintiff thus concludes across his various assertions that Defendants violated his First, Eighth, and Fourteenth Amendments rights.

### III. DISCUSSION

**A. Viable Claims:**

For the purposes of screening under 28 U.S.C. § 1915A, Plaintiff states a few claims against the CDCR-employed Defendants. For the damaging use of restraints, delays of medical care, and denials of medical care, Plaintiff states viable Eighth Amendment claims.

Plaintiff states viable Fourteenth Amendment claims for Equal Protection violations related to Defendants' alleged discriminatory use of restraints, as well as for Defendants' alleged groundless and ostensibly unreviewed decision to confine Plaintiff to isolation. Plaintiff also variously alleges a Fourteenth Amendment Due Process violation for Defendants' alleged retaliation against him for filing grievances and reporting abuses against inmates. See, e.g., ECF No. 30 at 20, 35, 39, 40, 42–43, 47, 56. It appears, however, that he means to allege *First Amendment* violations. To the extent that Plaintiff alleges those actions violate the First Amendment, he states viable claims.[3] See, e.g., Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Thus, for instance, Plaintiff has

---

[2] Plaintiff frequently uses terms like "clott off," "clotting," or "clotting off." See, e.g., ECF No. 30 at 13, 16–18. Plaintiff's use remains puzzling throughout his complaint, as it is unclear whether he means actual blood clotting during his dialysis treatments, or merely that dialysis was hindered. See id. Although logically referring to blood clotting, the complaint can be read both ways, the Court does not wish to make an assumption undermining Plaintiff's claims. The lack of clarity as to "clotting" informs the Court's decision to dismiss the complaint with leave to amend.

[3] Inmates generally lack, under the Due Process Clause, a constitutional entitlement to a specific grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Plaintiff, in any event, also labels his claims as First Amendment violations or as acts of retaliation, leading the Court to construe some of his apparent Fourteenth Amendment claims as First Amendment claims. See, e.g., ECF No. 30 at 7, 35, 39, 40, 42–43, 47.

1    stated First Amendment claims to the extent that state-actor defendants are alleged to have hindered
2    Plaintiff's care, harmfully and unnecessarily restrained Plaintiff, and threatened Plaintiff because
3    Plaintiff filed grievances, reported an inmates death, and tried to report another inmate's death. If
4    Plaintiff wishes to raise other Fourteenth Amendment claims, he may do so on amendment.

**B. Private Defendants:**

Plaintiff has not stated a claim against any of the privately employed defendants. He has not sufficiently alleged that they are state actors. To state a claim under § 1983, Plaintiff "must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 921 (9th Cir. 2011) (quoting Gritchen v. Collier, 254 F.3d 807, 812 (9th Cir. 2001)); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006) (citation omitted). The "color of law" or "state actor" requirement is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988); Gritchen, 254 F.3d at 812. The question in determining whether a person is subject to suit under § 1983 is the same as the question in Fourteenth Amendment claims, Pasadena Republican Club v. W. Justice Ctr., 985 F.3d 1161, 1167 (9th Cir. 2021), specifically, is the alleged infringement of federal rights fairly attributable to the government? Id.

Determining whether a private party acts under color of state law "is a matter of normative judgment, and the criteria lack rigid simplicity." Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001); Rawson v. Recovery Innovations, 975 F.3d 742, 747 (2020). "[N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." Brentwood, 532 U.S. at 295–96. Traditionally, to have been acting under color of state law, a defendant must have exercised power possessed on account of state law and made possible because they are cloaked with the authority of state law. West, 487 U.S. at 49; Florer, 639 F.3d at 922. A defendant need not necessarily be a state employee, but they must be "a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." Dennis v. Sparks, 449 U.S. 24, 27–28 (1980).

5

The Supreme Court and the Ninth Circuit have recognized at least four tests that facilitate identification of state action. Namely, "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." Rawson, 975 F.3d at 747 (quoting Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003)); see Pasadena Republican Club, 985 F.3d at 1167. Satisfaction of any the tests is enough to find state action, provided no "countervailing" factor defeats a finding of state action. Pasadena Republican Club, 985 F.3d at 1167; Rawson, 975 F.3d at 747. Regardless of the test, the question is simply always whether a defendant has exercised power possessed and made possible because state law. Pasadena Republican Club, 985 F.3d at 1167.

The public function test is satisfied only upon a showing that the function relevant to a claim is "both traditionally and exclusively governmental." Rawson, 975 F.3d at 747 (quoting Kirtley, 326 F.3d at 1093). A plaintiff may satisfy both the nexus and joint action tests by identifying "a sufficiently close nexus between the state and the private actor," such that the private action may be treated as an action of the State, or where the State is so interwoven with the private action that the State was a joint participant in the action. Id. (quoting Jensen v. Lane Cty., 222 F.3d 570, 575 (9th Cir. 2000)). Governmental compulsion or coercion can exist if the State exercised coercive power or provided encouragement—whether explicit or secret—such that a choice must be viewed as one made by the State. Id. (citing Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

Relevantly, physicians who contract with prisons to provide healthcare to inmates are state actors. See, e.g., West, 487 U.S. at 51–54; George v. Sonoma Cty. Sheriff's Dep't, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010). However, private doctors, nurses, and hospitals who have not assumed the State's obligation to provide medical care to inmates, are not state actors just because they provide one-off medical treatment to an inmate. See, e.g., West, 487 U.S. at 51–54; Felix v. Casey, No. 2:18-cv-3185-KJM-AC-P, 2021 WL 2209828, at *2 (E.D. Cal. June 1, 2021); Probst v. Adams Cty. Sheriff's Dep't, No. 1:20-cv-00032-DCN, 2021 WL 1554064, at *3 (D. Idaho Apr. 19, 2021); see also Rawson, 975 F.3d at 749.

But there is no allegation here that any of the private defendants here were contracted with CDCR. Indeed, the private defendants appear to work at private clinics without

assertion of any other connection to the State. It is not clear that those defendants, other than the instances in which they treated Plaintiff, cooperated to a sufficient degree with CDCR to provide care to inmates. Although the Court infers that the private defendants are contracted physicians, without more it is too unclear whether they are sufficiently cloaked in the authority of the State or have assumed the State's obligation to provide sufficient care to prisoners.

**C. Undiscussed Defendants:**

So far as the Court can tell, Plaintiff does not discuss Defendants O. Kkinola, S. Agarwal, M. Qureshi, C. Hammer, and S. Gates in his second amended complaint. See generally ECF No. 30. At present, then, Plaintiff does not state any grounds for relief against them.

Section 1983, under which Plaintiff brings this action, provides a cause of action for deprivation of constitutional rights and rights under federal law. 28 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cty. of San Diego, 680 F.3d 1148, 1152, 1158 (9th Cir. 2012) (discussing "under color of state law"). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Crowley, 678 F.3d at 736.

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); see Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th

1  Cir. 2012). But, although personal participation is sufficient, it is only one predicate for liability
2  under § 1983. Johnson; 588 F.2d at 734; see Lacey, 693 F.3d at 915. "The requisite causal
3  connection may [also] be established when a state official sets in motion a 'series of acts by others
4  which the actor knows or reasonably should know would cause others to inflict' constitutional
5  harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.3d at 734). This standard of
6  causation resembles the typical "foreseeability" formulation of proximate cause. Arnold v. Int'l
7  Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see Harper v. City of Los Angeles, 533
8  F.3d 1010, 1026 (9th Cir. 2008).

9      In sum, then, there can be no liability under 42 U.S.C. § 1983 unless there is an
10  adequate link or connection between a defendant's actions and the claimed deprivation. See, e.g.,
11  Arnold, 637 F.2d at 1355; Johnson, 588 F.2d at 743; see also Harper, 533 F.3d at 1026. A plaintiff
12  must show that a defendant was the actionable cause of a claimed injury. Harper, 533 F.3d at 1026.
13  Vague and conclusory allegations of official participation in a civil rights violation are
14  unsatisfactory. Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014); Ivey v. Bd. of Regents, 673
15  F.2d 266, 268 (9th Cir. 1982).

16      Plaintiff does not appear to discuss Defendants O. Kkinola, S. Agarwal, M. Qureshi,
17  C. Hammer, and S. Gates. They accordingly cannot be liable under § 1983 because Plaintiff does
18  not adequately connect them to any alleged deprivation.

### IV. CONCLUSION

20      Because it is possible that the deficiencies identified in this order may be cured by
21  amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122,
22  1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended
23  complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir.
24  1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in
25  order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint
26  must be complete in itself without reference to any prior pleading. See id.

27      If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the
28  conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis

v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if Plaintiff does not file an amended complaint within the time allowed, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  June 9, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE