1

2

3

4

5

6

7

8                        **IN THE UNITED STATES DISTRICT COURT**

9                      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JAMISI JERMAINE CALLOWAY,              No.  2:16-CV-2532-WBS-DMC-P

12              Plaintiff,

13        v.                                 <u>FINDINGS AND RECOMMENDATIONS</u>

14   CALIFORNIA DEPARTMENT OF
     CORRECTIONS AND
15   REHABILITATION, et al.,

16              Defendants.

17

18           Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

19   42 U.S.C. § 1983.  Pending before the Court is Plaintiff's fourth amended complaint, ECF No.

20   40.

21           The Court is required to screen complaints brought by prisoners seeking relief

22   against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

23   § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or

24   malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

25   from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

26   the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

27   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This

28   means that claims must be stated simply, concisely, and directly.  <u>See</u> <u>McHenry v. Renne</u>, 84 F.3d

                                                  1

1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

# I.  PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at California Health Care Facility (CHCF) Stockton, in Stockton, CA.  ECF No. 40, 1.  He brings suit against the following thirty defendants:

1.   B. Duffy, Warden at CHCF-Stockton
2.   Sergeant J. Biggs, Correctional Officer
3.   J. Clark, Chief Medical Officer
4.   A. Adams, Chief Medical Executive
5.   E. Butts, Medical Doctor
6.   Doe White, Medical Doctor
7.   Doe Foroutan, Medical Doctor
8.   Frank Doe, Medical Doctor
9.   Alex Doe, Medical Doctor
10.   San Joaquin General Hospital;
11.   K. Min, Medical Doctor;
12.   Doe Ko, Medical Doctor;
13.   D.J. Jacobs, Medical Doctor;
14.   N. Malakkla, Medical Doctor;
15.   O. Abu, Physician's Assistant;
16.   D. Chanden, Supervising Registered Nurse III;
17.   M. Cross, Health Care Appeal Registered Nurse;
18.   R. Hewit, Health Care Records Director;
19.   R. Recarey, Chief Executive Officer;
20.   J. Lewis, Chief Executive Officer;
21.   P.B. Segriddy, Nephrologist Specialist;
22.   San Joaquin Kidney Clinic;
23.   Kent Doe, Davita Inc. Supervisor;
24.   Carman Doe, Davita Inc. Registered Nurse;
25.   Irene Doe, Davita Inc. Technician;
26.   C. Russell, Davita Inc. Record Analyst;
27.   S. Davis, Davita Inc. Record Analyst;
28.   Davita Healthcare, Inc.;
29.   Total Renal Care, Inc.; and
30.   California Department of Corrections and Rehabilitation (CDCR).

Id.

2

1         Plaintiff has broken the complaint down into three claims, summarized below.

2         <u>First Claim:</u>

3         Plaintiff's first claim centers around an incident involving the use of restraints

4    while he was receiving dialysis, leading to a clot in his dialysis port which required further

5    medical attention.  Plaintiff states that he receives dialysis three times weekly through an access

6    port on his body.  <u>Id.</u> at 3-G.  According to Plaintiff, on January 16, 2015, Defendants B. Duffy

7    and J. Clark misused restraints on Plaintiff while he was undergoing a "surgical intervention."  <u>Id.</u>

8    at 3-C.  He states that this was against CDCR policy, but part of an "underground policy" by the

9    Defendants.  <u>Id.</u>  Plaintiff also claims that the use of restraints was deliberately racially

10   discriminatory because "no white inmates/patients" were "chained up in full restraints during

11   dialysis treatment."  <u>Id.</u> at 3-E.  He claims the restraints affected his access port.  <u>See id.</u>

12        Plaintiff also states that during his treatment Defendants Davita Healthcare Inc.,

13   P.B. Sagriddy, Kent Doe, and Carman Doe placed him in an isolated hepatitis B room.  <u>Id.</u> at 3-E.

14   Plaintiff states that he was told that this was due to "custody orders."  <u>Id.</u>  He also alleges that

15   they acted as agents in restraining or isolating Plaintiff with Defendants Duffy and Clark.  <u>Id.</u>

16        According to Plaintiff, he was transferred to San Joaquin General Hospital (SJGH)

17   immediately after his dialysis treatment on January 16 to save his dialysis access port.  <u>Id.</u> at 3-G.

18   Plaintiff states that he signed a consent agreement on January 17, 2015, to be transferred to SJGH

19   to treat his clotted dialysis access.  <u>Id.</u>  Plaintiff then claims that medical care was delayed by

20   Defendants SJGH, Dr. Foroutan, Dr. Alex, and Dr. Frank because of Plaintiff's low blood

21   pressure.  <u>Id.</u>  On January 18 and 19 Plaintiff again signed a consent agreement to receive

22   treatment, and again did not receive treatment to fix his dialysis access port.  <u>Id.</u>  Plaintiff states

23   that on the 19th, Defendants SJGH, Dr. Foroutan, Dr. Alex, and Dr. Frank came to Plaintiff's

24   bedside and said that the treatment was "not worth their time."  <u>Id.</u>  Plaintiff then rescinded his

25   consent to treatment and demanded to be discharged so that he could be sent to a hospital with a

26   radiology specialist to be able to treat his needs.  <u>Id.</u> at 3-G, 3-I.  It is not clear from the complaint

27   why a radiologist would be necessary.  According to Plaintiff, Defendants SJGH, Foroutan, Alex,

28   and Frank refused to allow Plaintiff to leave SJGH.  <u>Id.</u> at 3-I.  After days of being held at SJGH,

1    Plaintiff states that Defendant Dr. E. Butts told Plaintiff that he was not returned to CHCF-

2    Stockton on the orders of Defendants Duffy and Clark.

3    Plaintiff states that Defendants SJGH, Foroutan, Alex, Fank, Butts, Clark, Min,

4    and Duffy refused to give Plaintiff healthcare, and forced him to sign a consent form under duress

5    after being denied dialysis from January 19 to 27, 2015. Id. at 3-K. They also refused to allow

6    Plaintiff to get a second opinion, which Plaintiff alleges caused him further injury, although he

7    does not specify how. Id. Plaintiff was returned to CHCF-Stockton on January 27, 2015. Id.

8    According to Plaintiff, he was intentionally discharged with a "sepsis infected

9    catheter in his groin" on January 27, 2015. Id. at 3-L. He states that this was done by Defendants

10   SJGH, Foroutan, Alex, Frank, Butts, Clark, Min, and Duffy. Id. Plaintiff claims that he was

11   diagnosed with sepsis and a 104-degree fever and was forced to consent to receiving a new chest

12   catheter on February 25, 2015. Id.

13   On March 1, 2015, Plaintiff "had been returned," likely to CHCF-Stockton, with

14   an inadequate chest catheter which was causing chest pain and neck pain. Id. He states that this

15   inadequate catheter was intentionally left in place by Defendants Davita Healthcare Inc., Total

16   Renal Care, Inc., San Joaquin Dialysis, P.B. Sagriddy, Kent Doe, Carman Doe, E. Butts, J. Clark,

17   A. Adams, Doe White, and O. Abu. Id. He states that this catheter caused problems starting

18   March 24, however this is likely a typographical error, as Plaintiff seems to be referring to the

19   chest catheter he received in February. See id. He states that the issues with this catheter caused

20   stenosis and venous injuries. Id.

21   Plaintiff also claims that Defendant D.J. Jacobs refused to diagnose Plaintiff's pain

22   incident to his chest catheter and returned Plaintiff to his housing until July 22, 2015. Id. at 3-M.

23   Plaintiff was eventually sent for emergency care where a Dr. J. Chiang diagnosed Plaintiff with

24   pericarditis and recommended extra dialysis to remove fluid from around Plaintiff's lungs. Id.

25   Plaintiff further states that Defendant Doe Ko fabricated medical notes on July 22, 2015. Plaintiff

26   broadly states that this was somehow retaliatory for Plaintiff's grievances. See id.

27   / / /

28   / / /

4

Plaintiff finally states that Defendants Abu and P.B. Segriddy delayed removal of Plaintiff's chest catheter for over four years, causing several infections of the catheter. Id. at 3-N. Plaintiff alleges that this somehow involved a new access in his left arm which was caused to clot by a specialist at Saint Joseph Hospital (not named as a defendant). Id.

Second Claim:

Plaintiff alleges retaliation by Defendants J. Biggs, P.B. Segriddy, Kent Doe, Carman Doe, Irene Doe, J. Clark, A. Adams, M Cross, N. Malakkla, R. Recarey, J. Lewis, R. Hewett, D. Chandar, Davita Healthcare, Inc., Total Renal Care, Inc., and San Joaquin Dialysis, Inc. Id. at 4. He claims they did so by placing Plaintiff in a hepatitis isolation room after he filed grievances about the dialysis-related death of another inmate and staff use of racial slurs. Id.

He also states that Defendants Abu, Davita Healthcare Inc., Total Renal Care Inc., San Joaquin Dialysis, Inc., P.B. Segriddy, Kent Doe, and Carman Doe retaliated against Plaintiff by halting dialysis and treatment at the Outpatient Housing Unit on November 19, 2015. Id.

He further states that he was held without consent by SJGH, Davita, San Joaquin Dialysis, Inc., and Total Renal Care, Inc., from December 4 to December 14, 2015 in retaliation for lawsuits and grievances. Id. at 4-A.

Finally, Plaintiff make a conclusory claim that Defendants Davita Healthcare, Inc., Total Renal Care, Inc., San Joaquin Dialysis, Inc., SJGH, J. Biggs, P.B. Segriddy, Kent Doe, Carman Doe, Irene Doe, J. Clark, A. Adams, M. Cross, N. Malakkla, R. Recarey, J. Lewis, R. Hewett, and D. Chander retaliated against him. Id.

Third Claim:

Plaintiff alleges that Defendants B. Duffy, Davita Healthcare, Inc., Total Renal Care, Inc., San Joaquin Dialysis, P.B. Segriddy, Kent Doe, and Carman Doe retaliatorily scheduled Plaintiff for dialysis at CHCF-Stockton on November 24, 2015. Id. at 5. Plaintiff claims they scheduled him for dialysis at CHCF-Stockton after he had reported a threat to his life there. See id. The threat was apparently in retaliation for a battery on a correctional officer, D. Nieves. See id. According to Plaintiff the above defendants were told about the threat by witnesses, as well as a defendant in a separate lawsuit (E. Tootell). See id. The above

1    Defendants disregarded the threats to Plaintiff.  Id.  Plaintiff claims this caused him to be delayed

2    in receiving dialysis and that he did not complete his dialysis treatment.  Id.  He states that this

3    caused him to suffer low potassium levels of 7.9 and 7.4, to suffer from depression and to attempt

4    suicide three times due to fear for his safety and welfare.  Id.

5

6                                              **II.  DISCUSSION**

7               Plaintiff's allegations break down into use of force, deliberate indifference to

8    medical needs, and retaliation claims.  Plaintiff has stated some cognizable claims under 42

9    U.S.C. § 1983; those claims which may proceed are addressed in an accompanying service order.

10   Plaintiff's other claims are found to be inadequate for the reasons addressed below, including:

11   (1) claims against the CDCR which are barred by the Eleventh Amendment; (2) claims against

12   the entity defendants; (3) claims against supervisory defendants; (4) claims in which Plaintiff has

13   failed to allege sufficient facts to state various violations of the First and Eight Amendments; and

14   (5) claims based on failure to transfer him from one facility to another.

15          **A.**      **Eleventh Amendment**

16               The Eleventh Amendment prohibits federal courts from hearing suits brought

17   against a state both by its own citizens, as well as by citizens of other states.  See Brooks v.

18   Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  This prohibition

19   extends to suits against states themselves, and to suits against state agencies.  See Lucas v. Dep't

20   of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th

21   Cir. 1989).   A state's agency responsible for incarceration and correction of prisoners is a state

22   agency for purposes of the Eleventh Amendment.  See Alabama v. Pugh, 438 U.S. 781, 782

23   (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

24               The CDCR is a California government agency charged with corrections and

25   rehabilitation, and therefore suits against them are barred by the 11th Amendment.  Therefore,

26   where Plaintiff states any claims against them, those claims must fail.

27   / / /

28   / / /

1    **B.    Supervisor Liability**

2           Supervisory personnel are generally not liable under § 1983 for the actions of their

3    employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

4    respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

5    violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

6    Supreme Court has rejected the notion that a supervisory defendant can be liable based on

7    knowledge and acquiescence in a subordinate's unconstitutional conduct because government

8    officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

9    and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory

10   personnel who implement a policy so deficient that the policy itself is a repudiation of

11   constitutional rights and the moving force behind a constitutional violation may, however, be

12   liable even where such personnel do not overtly participate in the offensive act.  See Redman v.

13   Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

14          When a defendant holds a supervisory position, the causal link between such

15   defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

16   Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

17   1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

18   civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

19   Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

20   official's own individual actions, has violated the constitution."  Iqbal, 662 U.S. at 676.

21          Plaintiff makes multiple allegations against the entity defendants Davita

22   Healthcare, Inc., San Joaquin General Hospital, San Joaquin Dialysis, Inc., and Total Renal Care,

23   Inc.  None of the factual allegations in Plaintiff's complaint substantially differ between the entity

24   and individual defendants.  It is not reasonable to infer that the entity defendants somehow

25   directly participated in the use of restraint devices, the scheduling of dialysis, or any of the

26   choices regarding Plaintiff's medical care.  Therefore, it seems the only reasonable allegation

27   against these entities would be against them as policy-setting supervisors.

28   / / /

7

Supervisor liability is barred unless Plaintiff specifically alleges some policy that these organizations produced that led to a deprivation of constitutional rights, and Plaintiff has not done so.  In fact, the only allegation of an unconstitutional 'policy' in the complaint is that Defendants Duffy and Clark followed an "underground policy" in placing Plaintiff in full restraints during dialysis, which would mean that it was not a policy promulgated by any of the entity defendants.  See ECF No. 40, 3-C.  Because Plaintiff has not alleged in his current fourth amended complaint any specific causal link between any supervisory policies and challenged conduct, he has not stated a claim against Davita Healthcare, Inc., San Joaquin Dialysis, Inc., San Joaquin General Hospital, or Total Renal Care, Inc., and they should now be dismissed from the action without further leave to amend.

## C.     Eighth Amendment Claims

Plaintiff alleges excessive force and deliberate indifference to medical needs. Each is discussed below.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

/ / /

1.      <u>Excessive Force</u>

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992); <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. <u>See</u> <u>Whitley</u>, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. <u>See</u> <u>Hudson</u>, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. <u>See</u> <u>Jordan v. Gardner</u>, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. <u>See</u> <u>Hudson</u>, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. <u>See</u> <u>Whitley</u>, 475 U.S. at 321-22.

Plaintiff alleges that Defendants P.B Sagriddy, Kent Doe, and Carman Doe placed Plaintiff in an isolation room, and that they acted as agents with Defendants Duffy and Clark in restraining and isolating Plaintiff. Regarding the isolation, Plaintiff states that he was told that this was due to custody orders. <u>See</u> <u>id.</u> This seems to indicate exactly the type of security purpose that would make placement in isolation not excessive, unless the custody orders themselves were improper, though Plaintiff has not alleged this. Therefore, because it is not reasonable to infer a wanton or malicious purpose this claim should be dismissed. Additionally, Plaintiff's conclusory allegation that these defendants acted as agents of other defendants without identifying what conduct that entailed is not sufficient to state a claim for excessive force against Defendants Sagriddy, Kent Doe or Carman Doe.

9

1

2                    2.      Deliberate Indifference to Medical Needs

3              Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

4     injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105;

5     see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health

6     needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by

7     Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if the failure to

8     treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and

9     wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled

10    on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see

11    also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness

12    are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2)

13    whether the condition significantly impacts the prisoner's daily activities; and (3) whether the

14    condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122,

15    1131-32 (9th Cir. 2000) (en banc).

16             The requirement of deliberate indifference is less stringent in medical needs cases

17    than in other Eighth Amendment contexts because the responsibility to provide inmates with

18    medical care does not generally conflict with competing penological concerns.  See McGuckin,

19    974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

20    decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

21    1989).  The complete denial of medical attention may constitute deliberate indifference.  See

22    Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

23    treatment, or interference with medical treatment, may also constitute deliberate indifference.  See

24    Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate

25    that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

26    / / /

27    / / /

28    / / /

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

i.      Hospital Discharge With Septic Catheter:

Plaintiff claims that Defendants Foroutan, Alex, Frank, Butts, Clark, Min, and Duffy discharged him from San Joaquin General Hospital with an infected catheter on January 27, 2015.  ECF No. 40, 3-L.  He stated that he was diagnosed with sepsis and a 104-degree fever, and that this resulted in him having to return to the hospital to receive a new chest catheter.  Id. While Plaintiff makes the conclusory allegation that this was done 'intentionally,' from his pleadings it appears that he was discharged, then developed sepsis and had to return to the hospital.  Because of this, it is impossible to tell whether the facts which Plaintiff alleges point to deliberate indifference, medical malpractice, or mere unfortunate circumstance.  Additionally, here, as elsewhere, Plaintiff does not attribute any actions to any specific defendants, but to a large group including doctors, and the CHCF-Stockton Warden.  This makes it difficult to tell exactly what conduct Plaintiff is alleging, whether it was a transfer order despite symptoms, doctors failing to report symptoms, or something else entirely.  Therefore, this claim should be dismissed with leave to amend and provide an adequate pleading.

ii.      Chest Catheter:

Plaintiff states that Defendants P.B. Sagriddy, Kent Doe, Carman Doe, E. Butts, J. Clark, A. Adams, Doe White, and O. Abu left an inadequate chest catheter in Plaintiff in February and March of 2015.  Id. at 3-L.  Plaintiff claims that this led to stenosis and venous injuries. Based on the complaint it appears that Plaintiff either complained about pain from the chest catheter and was denied treatment by these defendants, or that Plaintiff received the chest catheter from these defendants and complained to someone else.  Plaintiff has not alleged any facts that would indicate that receiving the chest catheter was a violation of his rights. While perhaps he has alleged facts towards a malpractice claim, such would not be actionable under § 1983.  Because it

11

1   is impossible to tell what conduct Plaintiff is attributing to the above defendants, or if that

2   conduct creates a cause of action, this claim should be dismissed with leave to amend these

3   pleadings should facts sufficient to support a claim exist here.

4      **D.   Retaliation**

5          In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

6   establish that he was retaliated against for exercising a constitutional right, and that the retaliatory

7   action was not related to a legitimate penological purpose, such as preserving institutional

8   security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting

9   this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the

10  exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995);

11  Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also

12  show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by

13  the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also

14  Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must

15  establish the following in order to state a claim for retaliation: (1) prison officials took adverse

16  action against the inmate; (2) the adverse action was taken because the inmate engaged in

17  protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the

18  adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

19         As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not

20  alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm

21  that is more than minimal will almost always have a chilling effect."  Id. at n.11.  By way of

22  example, the court cited Pratt in which a retaliation claim had been decided without discussing

23  chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to

24  discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate

25  penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly

26  stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse

27  action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also

28  Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action

1   which is more than minimal satisfies this element.  Thus, if this reading of <u>Rhodes</u> is correct, the

2   chilling effect element is essentially subsumed by adverse action.

3               1.      Retaliation by Defendant Ko

4               Plaintiffs only allegation against Defendant Ko is that they falsified medical notes

5   in retaliation of Plaintiff's grievances about the failure to remove his chest catheter.  <u>See</u> ECF No.

6   40, 3-M.  It is entirely unclear how this is related to Plaintiff's grievance, or how it would chill his

7   protected rights.  Therefore, Plaintiff has not stated a cognizable retaliation claim against

8   Defendant Ko.

9               2.      Placement in Isolation Room

10              Plaintiff re-alleges his claims about placement in an isolation room by Defendants

11  J. Biggs, P.B. Segriddy, Kent Doe, Carman Doe, Irene Doe, J. Clark, A. Adams, M Cross, N.

12  Malakkla, R. Recarey, J. Lewis, R. Hewett, and D. Chandar.  <u>See id.</u> at 4.  Here, Plaintiff

13  additionally states that his placement in the isolation rooms was in retaliation for his grievance

14  about the death of another inmate, and his grievance that staff used racist language.  <u>Id.</u>  There are

15  two issues with this claim that call for its dismissal.  First, Plaintiff does not specifically allege

16  any conduct by any of these defendants beyond the broad general allegation that they all placed

17  him in a room.

18              Second, it is unclear how this was intended to, or did chill Plaintiff's First

19  Amendment rights.  Plaintiff seems to be referencing temporary custodial placement in a room

20  while waiting for or undergoing dialysis.  He has also already stated that this was isolation was

21  supposedly due to a custody order.  Even taking Plaintiff's allegations as true, there are simply

22  insufficient facts to construe this as adverse conduct intended to retaliate for a grievance.

23  Therefore, this, like the other claims referenced herein, should be dismissed.

24              3.      Dialysis Scheduling at CHCF-Stockton

25              Plaintiff states that Defendants B. Duffy, P.B. Segriddy, Kent Doe, and Carman

26  Doe scheduled Plaintiff for dialysis at CHCF-Stockton in retaliation for Plaintiff's alleged attack

27  on a correctional officer.  <u>See</u> ECF No. 40, 5.  Plaintiff claims that this somehow led to a delay in

28  receiving dialysis, and incomplete dialysis which caused him to have low potassium levels, and to

1   attempt suicide.  See id.  However, it is entirely unclear how the challenged action of scheduling

2   him for dialysis at CHCF-Stockton led to insufficient medical treatment which he claims caused

3   his actual harm.  It is also unclear how the adverse action of scheduling him for dialysis at CHCF-

4   Stockton is connected to any protected activity.  There are no reasonable inferences that this

5   Court can make to fill in that missing information.  Therefore, this claim should be dismissed.

6             **E.**      **Failure to Transfer Plaintiff**

7          Plaintiff claims he was held at San Joaquin General Hospital against his will.  See

8   id. at 3-I.  He also states that he was held without consent by SJGH, Davita, Inc., San Joaquin

9   Dialysis, Inc., and Total Renal Care, Inc., from December 4 to 14, 2015.  Id. at 4-A.  There is

10   generally no liberty interest for prisoners in avoiding transfer.  See Olim v. Wakinekona, 461 U.S.

11   238, 245 (1983).  There may be an interest in avoiding transfer for retaliatory reasons.  See Pratt

12   v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  The only interest in not being transferred is that of

13   avoiding transfer to a psychiatric treatment facility for involuntary treatment.  See Vitek v. Jones,

14   445 U.S. 480, 494 (1980).  However, that is not what Plaintiff alleges.  Rather, Plaintiff alleges

15   that he was kept in a facility after rescinding consent to dialysis-related treatment.  Therefore, any

16   claims by Plaintiff that he was kept in the hospital or elsewhere against his will fall short and

17   should be dismissed.

18

19                     **III.  CONCLUSION**

20          Because it does not appear possible that the deficiencies identified herein can be

21   cured by amending the complaint, Plaintiff is not entitled to leave to amend prior to dismissal of

22   the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

23   Additionally, Plaintiff has already had four opportunities to provide a sufficient complaint and

24   has made substantially similar allegations in this complaint to his third amended complaint.  See

25   ECF No. 34.

26   / / /

27   / / /

28   / / /

1 | ///

2    Based on the foregoing, the undersigned recommends:

3    1.  The claims identified above be dismissed.  This will result in the dismissal of

4        the following defendants: (1) Sergeant J. Biggs, Correctional Officer; (2) A.

5        Adams, (3) Chief Medical Executive; (4) Doe White, Medical Doctor; (5) San

6        Joaquin General Hospital; (6) Doe Ko, Medical Doctor; (7) N. Malakkla,

7        Medical Doctor; (8) D. Chanden, Supervising Registered Nurse III; (9) M.

8        Cross, Health Care Appeal Registered Nurse; (10) R. Hewit, Health Care

9        Records Director; (11) R. Recarey, Chief Executive Officer; (12) J. Lewis,

10       Chief Executive Officer; (13) San Joaquin Kidney Clinic; (14) Irene Doe,

11       Davita Inc. Technician; (15) C. Russell, Davita Inc. Record Analyst; (16) S.

12       Davis, Davita Inc. Record Analyst; (17) Davita Healthcare, Inc.; (18) Total

13       Renal Care, Inc.; and California Department of Corrections and Rehabilitation

14       (CDCR); and

15   2.  That this action proceed on the fourth amended complaint on Plaintiff's claims

16       identified in the accompanying service order as cognizable.

17    These findings and recommendations are submitted to the United States District

18   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

19   after being served with these findings and recommendations, any party may file written

20   objections with the court.  Responses to objections shall be filed within 14 days after service of

21   objections.  Failure to file objections within the specified time may waive the right to appeal.  See

22   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23

24   Dated:  July 25, 2023

25                                               _____
                                                 DENNIS M. COTA
26                                               UNITED STATES MAGISTRATE JUDGE

27

28